**Affirmed and Opinion Filed November 25, 2013**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00188-CV

### BAYLOR UNIVERSITY MEDICAL CENTER AND BAYLOR HEALTH CARE SYSTEM, Appellants
### V.
### SARAH LAWTON, Appellee

### On Appeal from the 162nd Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. 12-09816

## OPINION

Before Justices Bridges, Fillmore, and Lewis
Opinion by Justice Bridges

Appellants Baylor University Medical Center and Baylor Health Care System (collectively referred to as "Baylor") appeal from the trial court's denial of their motion to dismiss pursuant to chapter 74 of the Texas civil practice and remedies code ("Chapter 74") and request for attorney's fees. In a single issue, Baylor contends the trial court erred in failing to dismiss appellee Sarah Lawton's lawsuit against them when she failed to file an expert report within 120 days of filing a nonsubscriber lawsuit against a health care provider. For the reasons expressed below, we affirm.

### Background

Lawton sued Baylor for workplace injuries allegedly sustained when raw sewage began to back-up into showers and sinks on the fourth floor where she was working as a nurse. In

response to the back-up, maintenance workers employed by Baylor poured chemicals into several drains throughout the fourth floor. Lawton alleges she was injured as a result of the irritants in the sewage fumes and the poured chemicals. She filed suit against Baylor for these injuries on August 29, 2012.

On October 4, 2012, in their first amended answer, Baylor asserted Lawton's claims should be dismissed because she failed to file an expert report within 120 days of filing her lawsuit. Eight days later, Baylor filed a motion to dismiss pursuant to Chapter 74 and request for attorney's fees. Lawton responded to the motion, noting "[t]his is not a Health Care Liability Claim because [she] alleges a workplace injury wholly unrelated to the provision of health care. . . ." The associate judge heard and denied Baylor's motion on December 4, 2012. Baylor then appealed the associate judge's decision, and the trial court signed an order on January 3, 2013, denying Baylor's motion to dismiss pursuant to Chapter 74 and request for attorney's fees.

## Analysis

In this appeal, we are asked to determine whether Lawton's claims fall within the scope of Chapter 74. Texas courts review issues of statutory interpretation de novo. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). In construing a statute, our aim is to determine and give effect to the legislature's intent, and we begin with the plain and common meaning of the statute's words. *Texas West Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012); *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006).

Chapter 74 provides that "[i]n a health care liability claim, a claimant shall, not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports. . . for each physician or health care provider against whom a liability claim is asserted." TEX. CIV. PRAC. & REM. CODE ANN. §74.351. A health care liability claim is defined as "a cause of action against a health care provider or physician for treatment,

lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract." *Id*. at §74.001(a)(13). A health care liability claim has three elements: (1) the defendant is a health care provider or physician; (2) the claimant's cause of action is for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's alleged departure from accepted standards proximately caused the claimant's injury or death. *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012).

Because the first and third elements are not in dispute, we focus on the second element, concerning the nature of Lawton's cause of action. Specifically, the parties ask us to consider whether Lawton's claims center on a departure from accepted standards of safety as contemplated by Chapter 74.

Baylor relies primarily on the *Williams* decision for the proposition that, even though Lawton's claims are unrelated to health care, they fall within the ambit of Chapter 74. *See Williams*, 371 S.W.3d 171. The Texas Supreme Court has instructed that, in order to differentiate between ordinary negligence claims and health care liability claims, the courts must focus on the nature of the acts or omissions causing the alleged injuries. *Id.* at 176. Accordingly, a brief discussion of *Williams* is necessary.

In *Williams*, a psychiatric technician and professional caregiver at West Oaks was injured on the job while supervising a patient. *Id.* at 175. The employee brought claims against his non-subscribing employer, a hospital, after he was injured in an altercation with the psychiatric patient. *Id.* Williams alleged the hospital failed to properly train, warn, and supervise him to work with potentially violent psychiatric patients and, as a result, failed to provide a safe

–3–

workplace. *Id.* at 192-93. The hospital filed a motion to dismiss based on Williams's failure to provide an expert report in accordance with Chapter 74. The trial court denied the motion, and the court of appeals affirmed.

The Texas Supreme Court reversed and found that William's claims were health care liability claims based on claimed departures from accepted standards of health care and safety. *Id.* at 193. In its analysis, the *Williams* court noted that "[i]n seeking to distinguish ordinary negligence claims from [health care liability claims], the heart of these cases lies in the nature of the acts or omissions causing claimants' injuries and whether the events are within the ambit of the legislated scope of [Chapter 74]." *Id*. at 176. In short, we must determine whether the relevant allegations are negligence claims or are properly characterized as health care liability claims under Chapter 74. *Id.* at 179.

Like our sister court in *Twilley*,[1] we conclude *Williams* is distinguishable from the case at hand. *See Good Shepherd Med. Ctr.-Linden, Inc. v. Twilley*, No. 06-12-00098-CV, 2013 WL 772136, *3 (Tex. App.—Texarkana March 1, 2013, pet. denied) (concluding because the claims at issue were unrelated to health care–save only that they arose on the premises of a health care provider–no expert report was required). The claim in *Williams* had an indirect relationship to health care; Lawton's claim does not.

"The heart of these cases lies in the nature of the acts or omissions causing claimants' injuries and whether the events are within the ambit of the legislated scope of [Chapter 74]." *Williams*, 371 S.W.3d at 176. Because Williams's safety claims implicated safety standards required for working with potentially violent schizophrenic patients at a mental health hospital, they were indirectly related to health care. *See Twilley*, 2013 WL 772136 at *4. Here, however,

---

[1] Although the Texas Supreme Court had already denied petition for review in *Twilley*, Baylor alleged in oral argument that the high court had incorrectly decided to deny the petition and cited us to the pending motion for rehearing on the petition for review. However, on October 11, 2013, the Texas Supreme Court denied the motion for rehearing on the petition for review.

it is undisputed that Lawton was not, at least when she was injured, a recipient of health care, and the gravamen of Lawton's claim—workplace injuries—is unrelated to the provision of health care to the patient population or to anyone else.[2]

In spite of these facts, Baylor contends *Williams* requires Lawton to produce an expert report. Like the *Twilley* Court, however, we do not believe *Williams* encompasses safety claims that are completely untethered from health care. *See id.* at *5. "[I]f *every* safety claim against a health care provider were considered a health care liability claim, there would be no need to analyze the nature of the acts or omissions which caused the alleged injuries." *Id.* (emphasis in original). The Texas Supreme Court has stated that a claim is not necessarily a health care liability claim merely because a patient is injured by a physician or health care provider. *See Loaisiga*, 379 S.W.3d at 256-57. "In some instances, the only possible relationship between the conduct underlying a claim and the rendition of medical services or healthcare will be the healthcare setting (i.e. the physical location of the conduct in a health care facility), the defendant's status as a doctor or health care provider, or both." *Id.* at 256. Likewise, "safety" claims completely unrelated to health care are excluded from the ambit of the legislated scope of Chapter 74.[3] *Twilley*, 2013 WL 772136 at *6; *see also Doctors Hosp. At Renaissance, LTD. v. Mejia*, No. 13-12-00602-CV, 2013 WL 4859592 at *4 (Tex. App.—Corpus Christi Aug. 1, 2013, no pet.) (mem. op.) (relying on *Twilley*).

Moreover, to require an expert report in this case would amount to an exercise in futility. *See Twilley* at *6. Section 74.402 essentially requires that, in a suit involving a health care liability claim against a health care provider, a qualified expert must be:

---

[2] During oral argument, counsel for Baylor conceded there is nothing in the record to indicate the sewage back-up took place in patient rooms.

[3] We note that the same day the Texas Supreme Court denied the petition for review in *Twilley*, it issued its opinion in *Psychiatric Solutions, Inc. v. Palit*, No. 12-0388, 2013 WL 4493118 (Tex. 2013), which followed the holding in *Williams*. Thus, we may logically conclude the Texas Supreme Court agreed with the distinction made in *Twilley* that claims completely unrelated to health care are excluded from the ambit of Chapter 74.

practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant. . . , has knowledge of accepted standards of care for. . . the diagnosis, care or treatment of the illness, injury or condition involved. . . and is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

TEX. CIV. PRAC. & REM. CODE ANN. §74.402(b)(1)-(3). In this case, it would be difficult, if not impossible, to find a qualified expert under the statute who was also competent to opine on the relevant accepted standards of care for plumbing. *See Twilley*, 2013 WL 772136 at \*6 (noting difficulty in finding expert that satisfied Chapter 74 and could also testify to the accepted standards of care regarding OSHA ladder construction and installation and walking surface standards). A medical report here would not shed any light on whether the techniques used violated plumbing standards.

Although a safety claim under Chapter 74 need not be "directly related to health care," the converse—that a safety claim falls within the ambit of Chapter 74 even when it is completely untethered from health care—is not the way we or the *Twilley* Court understood the *Williams* holding. *See id.* In *Williams*, the safety claim was indirectly related to health care. It was not, as are the claims here, related to health care only in that the claims arose on hospital premises. *See id.*

We, therefore, conclude Lawton's claim against Baylor for her workplace injuries do not come within the ambit of Chapter 74, and no expert report was required. *See Loaisiga*, 379 S.W.3d at 257; *Mejia*, 2013 WL 4859592 at \*4; *Twilley*, 2013 WL 772136 at \*5-7. We overrule Baylor's sole issue on appeal and affirm the judgment of the trial court.

/David L. Bridges/

DAVID L. BRIDGES

JUSTICE

130188F.P05

–6–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BAYLOR UNIVERSITY MEDICAL
CENTER AND BAYLOR HEALTH CARE
SYSTEM, Appellants

No. 05-13-00188-CV          V.

SARAH LAWTON, Appellee

On Appeal from the 162nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 12-09816.
Opinion delivered by Justice Bridges.
Justices Fillmore and Lewis participating.

      In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

      It is **ORDERED** that appellee SARAH LAWTON recover her costs of this appeal from
appellants BAYLOR UNIVERSITY MEDICAL CENTER AND BAYLOR HEALTH CARE
SYSTEM.

Judgment entered November 25, 2013

/David L. Bridges/

DAVID L. BRIDGES
JUSTICE