

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00277-CV

**METHODIST HEALTHCARE SYSTEM OF SAN ANTONIO, LTD., LLP**
d/b/a Northeast Methodist Hospital,
Appellant

v.

Thomas **DEWEY**,
Appellee

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-12676
Honorable Solomon Casseb, III, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:        Karen Angelini, Justice
                Sandee Bryan Marion, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  February 5, 2014

AFFIRMED

This is an interlocutory appeal from an order denying a motion to dismiss for failure to file an expert report pursuant to the Texas Medical Liability Act.  On appeal, appellant Methodist Healthcare System of San Antonio, Ltd., LLP d/b/a Northeast Methodist Hospital claims appellee Thomas Dewey was required to file an expert report pursuant to section 74.351(a) of the Texas Civil Practice and Remedies Code, and therefore the trial court erred in denying its motion to dismiss.  We affirm the trial court's order.

BACKGROUND

According to his petition, Dewey, who walks with the aid of crutches, went to Northeast Methodist to visit his mother, who was a patient at the hospital. As Dewey was entering the hospital, an electronic door closed on him, knocking him to the ground and fracturing his hip. Dewey required immediate surgery after the fall. Based on the incident, Dewey filed a premises liability cause of action. He did not file an expert report pursuant to section 74.351(a).

Northeast Methodist filed a motion to dismiss, asserting Dewey's claim was a health care liability claim (HCLC), and therefore Dewey was required to file an expert report pursuant to section 74.351(a). Dewey claims no expert report is required because his claim is a premises liability claim as opposed to a HCLC. The trial court agreed with Dewey and denied Northeast Methodist's motion to dismiss. Thereafter, Northeast Methodist perfected this interlocutory appeal, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West Supp. 2012), challenging the trial court's order.

## ANALYSIS

In this appeal, we are asked to determine whether Dewey's premises liability claim falls under the expert reporting requirements of section 74.351 of the Texas Medical Liability Act.

### *Standard of Review*

The arguments presented in this appeal implicate the scope of claims covered under the Texas Medical Liability Act. *See Tex. W. Oaks Hosp., L.P. v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012). Whether the Texas Legislature intended claims such as Dewey's to fall within the mandates of the expert reporting requirements is "a matter of statutory construction, a legal question we review de novo." *Id.*; *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011); *see Carpinteyro v. Gomez*, 403 S.W.3d 508, 510 (Tex. App.—San Antonio 2013, pet. denied).

In construing a statute, the reviewing court must "'determine and give effect to the Legislature's intent.'" *West Oaks*, 371 S.W.3d at 177 (citing *McIntyre v. Ramirez*, 109 S.W.3d

741, 745 (Tex. 2003) (quoting *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002)). In making this determination, we must begin by looking at the "'plain and common meaning of the statute's words.'" *Id.*

### Application

Chapter 74 defines a HCLC as "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). Thus, a HCLC has three elements: (1) the defendant is a health care provider or physician; (2) the claim at issue concerns treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or healthcare, or safety or professional or administrative services directly related to health care; and (3) the defendant's alleged act or omission proximately caused the injury. *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). Here, it is undisputed that Northeast Methodist is a healthcare provider and that Dewey contends his injuries resulted from acts or omissions by Northeast Methodist. Thus, in this appeal, we need only determine the second element, i.e., whether Dewey's cause of action "is for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care." *See Loaisiga*, 379 S.W.3d at 255.

In support of its contention that Dewey's claim is a HCLC, Northeast Methodist relies primarily on the supreme court's recent decision in *Tex. W. Oaks Hosp., LP v. Williams* and the decision from the 14th Court of Appeals in *Ross v. St. Luke's Episcopal Hospital*, No. 14-12-00885-CV, 2013 WL 1136613 (Tex. App.—Houston [14th Dist.] Mar. 19, 2013, pet. filed) (mem. op.). In *West Oaks*, the plaintiff, a hospital employee, was injured by a mentally ill patient. 371

S.W.3d at 175. The employee was injured when he took the patient to a smoking area in violation of the unit restriction policy in place with regard to the patient. *Id.* The patient died. *Id.* After the patient's estate sued the hospital and the employee, the employee filed a cross claim for negligence against the hospital under the provisions for claims against employers not subscribed to worker's compensation. *Id.* The employee did not file an expert report pursuant to section 74.351(a).

Because the employee did not file an expert report, the hospital moved to dismiss his claim, asserting the claim was a HCLC and the employee had not served the expert report as required by the statute. *Id.* at 175. The trial court denied the hospital's motion, and the court of appeals affirmed the decision. *Id.* at 176. The hospital filed a petition for review in the supreme court.

Upon review, the court noted the Legislature, in "changing the term 'patient' to 'claimant' and defining 'claimant' as a 'person' expand[ed] the breadth of the HCLC's beyond the patient population." *Id*. at 178. The court further explained, "[t]his in turn necessarily widened the reach of the expert report requirement, unless otherwise limited by other statutory provisions." *Id*. In "widening the reach" of the requirement, however, the court did not go so far as to say all cases involving a health care facility are now considered HCLC for purposes of requiring an expert report. Rather, when determining whether a particular cause of action comes under the Texas Medical Liability Act, the court held that "[w]ith the exception of medical care and health care claims, our focus in determining whether claims come under the TMLA is not the status of the claimant, but the gravamen of the claim or claims against the health care provider." *Id.*; *see Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 854 (Tex. 2005).

The supreme court concluded that because the hospital's relationship with the patient was material and significant to the employee's claim against the hospital, the expert report requirement applied. *Id.* at 181. Specifically, the court held that claims based on departures from accepted standards of health care involve a nexus between the standard departed from and the alleged injury

and that such a nexus existed in the case – the employee was a health care provider who was assaulted by a hospital patient. *Id.*

In *Ross*, the court of appeals relied upon *West Oaks* to affirm the dismissal of a hospital visitor's slip-and-fall claim for failure to submit expert report. *Ross*, 2013 WL 1136613, at *1–2. The *Ross* court interpreted the supreme court's decision to mean that the fact the plaintiff was a mere visitor in the hospital was irrelevant for determining whether the claim was a health care liability claim. *Id.* at *1. Rather, because the visitor was a "claimant," as defined by the statute as interpreted by the supreme court in *West Oaks*, her "garden-variety slip and fall case" fell under the auspices of the Texas Medical Liability Act. *Id.* According to the court of appeals, the supreme court instructs "that a connection between the act or omission and health care is unnecessary for purposes of determining whether" the plaintiff's claim is a HCLC. *Id.* Rather, "[a]n allegation pertaining to safety, standing alone and broadly defined, is sufficient." *Id.* We disagree with the *Ross* court's interpretation of *West Oaks*.

As noted by the Beaumont Court of Appeals in *Christus St. Elizabeth Hosp. v. Guillory*, the Texas Supreme Court has yet to address whether a visitor, who slips and falls in a health care facility, has brought a HCLC when the visitor sues the health care facility. No. 09-12-00490-CV, 2013 WL 6019523, at *2 (Tex. App.—Beaumont Nov. 14, 2013, pet. filed). However, three of our sister courts have addressed this issue, two holding such claims are not HCLCs, one holding such claims are HCLCs. *See Guillory*, 2013 WL 6019523, at *2–3; (affirming trial court's denial of hospital's motion to dismiss hospital visitor's slip and fall claim, where visitor failed to file section 74.351 expert report); *Doctors Hosp. at Renaissance, Ltd. v. Mejia*, No. 13-12-00602-CV, 2013 WL 4859592, at *1–3 (Tex. App.—Corpus Christi Aug. 1, 2013, pet. filed) (mem. op.) (affirming trial court's denial of hospital's motion to dismiss where hospital visitor fell on waxed floor of walkway and visitor failed to file expert report); *Ross*, 2013 WL 1136613, at *2 (affirming

trial court's order dismissing plaintiff's case where visitor who fell in hospital lobby failed to file expert report).

We find the analysis by the Beaumont and Corpus Christi courts, as well as that by the Texarkana and Dallas courts in two other cases,[1] compelling. As noted in *Mejia*, the supreme court stopped short of concluding that all premises liability claims involving a health care facility are HCLCs. 2013 WL 4859592, at *2. Rather, we agree with the *Mejia* court that the supreme court recognized a new type of healthcare liability claim, one involving safety that is indirectly related to health care. *Id.*; *see Good Shepherd Med. Ctr.-Linden, Inc. v. Twilley*, No. 06-12-00098-CV, 2013 WL 772136, at *5 (Tex. App.—Texarkana Mar. 1, 2013, pet. denied) (holding in case involving employee that *West Oaks* does not encompass safety claims that "are completely untethered from health care."). Accordingly, as did the *Mejia* court, we interpret the *West Oaks* decision "narrowly to govern cases that involve safety claims that are indirectly related to healthcare." *Id.* Dewey's claim does not fall into this category.

The gravamen of Dewey's claim is straightforward and simple: a premises-liability claim or, as our sister court in *Ross* described, a "garden-variety slip and fall case." *Ross*, 2013 WL 1136613, at *1. As alleged, this "safety" claim is in no way "tethered" to any form of healthcare. *See Twilley*, 2013 WL 772136, at *5. In his petition, Dewey alleges that when he entered Northeast Methodist to visit his mother, a patient at the hospital, he was struck from behind by a malfunctioning electronic double door, knocked to the ground, and suffered a hip fracture. Dewey's safety contention did not involve healthcare, directly or indirectly. Dewey was not a patient, was not seeking medical or health care, was not assisted by healthcare personnel (at least

---

[1] Although the cases we reference from the Texarkana and Dallas courts did not involve visitors to a healthcare facility, but rather employees of such facilities, the analysis is comparable under the circumstances of those cases. *See Good Shepherd Med. Ctr.-Linden, Inc. v. Twilley*, No. 06-12-00098-CV, 2013 WL 772136, at *1–5 (Tex. App.—Texarkana Mar. 1, 2013, pet. denied) (involving hospital employee who fell from ladder); *Baylor University Medical Center v. Lawton*, No. 05-13-00188-CV, 2013 WL 6163859, at *1–4 (Tex. App.—Dallas Nov. 25, 2013, pet. filed) (involving nurse who sustained injuries from irritants in fumes from raw sewage and chemicals on floor).

not until after the incident), and he was not an employee of the hospital. Dewey was merely a visitor to an establishment that happened to be a hospital, no different from any other visitor that might be injured on the premises of any other business.[2] As stated in *Guillory*, Dewey alleged breaches of standards of ordinary care applicable to a visitor present in a common area of the hospital, a duty that is no different from the duties imposed on other businesses that allow visitors to be present on their premises. 2013 WL 6019523, at *2. Dewey's claim does not implicate a standard of care that requires medical or medical safety expert testimony to prove or refute its merits, and therefore, it is not a HCLC. *See Psychiatric Solutions, Inc. v. Palit*, No. 12-0388, 2013 WL 4493118, at * 3 (Tex. Aug. 23, 2013) (holding that because employee's claim required expert medical or health care testimony to prove or refute its merits, claim was HCLC). In other words, it would not "blink reality" to conclude that no professional medical judgment is required to determine what the standard of care is and whether such standards were breached. *Id.*

This case is obviously distinguishable from *West Oaks* where the plaintiff was a hospital employee who brought a negligence cross action against his employer in a HCLC brought by the estate of a psychiatric patient. *See West Oaks*, 371 S.W.3d at 171. The court in finding that the employee's claim was a HCLC, reasoned that the employee was a health care provider with "[c]laims based on departures from accepted standard of health care," and "therefore involve[d] a nexus between the standard departed from and the alleged injury." *Id*. at 181. That is, the employee was a health care provider for the patient whose estate brought the original HCLC action against the hospital, and the employee was assaulted by that patient for whom the employee was providing health care. Thus, the employee's claim was tethered, whether directly or indirectly, to healthcare. *Id.* The employee's claim in *West Oaks* was not a claim "completely untethered from health care," as is Dewey's claim. *See Twilley*, 2013 WL 772136, at *5.

---

[2] Evidently, as a result of his injury, Dewey subsequently *became* a patient at Northeast Methodist. However, it is undisputed that at the time of his injury, he was a mere visitor.

Here, Dewey was a visitor, and the gravamen of his cause of action was a "garden-variety slip and fall case." We agree with the court in *Lawton*, that "[a]lthough a safety claim under Chapter 74 need not be 'directly related to health care,' the converse—that a safety claim falls within the ambit of Chapter 74 even when it is completely untethered from health care—is not the way we" understand the *West Oaks* holding. 2013 WL 6163859, at *3 (agreeing with holding and analysis in *Twilley*).

Based on the foregoing, we conclude Dewey's premises liability cause of action against Northeast Methodist is not a HCLC within the ambit of Chapter 74 of the Texas Medical Liability Act. Accordingly, Dewey was not required to serve Northeast Methodist with a section 74.351(a) expert report. We affirm the trial court's judgment.

Marialyn Barnard, Justice