**AFFIRMED; Opinion Filed June 25, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01304-CV

### DHS MANAGEMENT SERVICES, INC., DIAGNOSTIC HEALTH SERVICES, INC., MOBILE DIAGNOSTIC SYSTEMS, INC., AND JENNIFER ANN HJARPE, Appellants
### V.
### HEATHER CASTRO, Appellee

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-11-15890**

## OPINION

Before Justices O'Neill, Lang-Miers, and Evans
Opinion by Justice Evans

This is an interlocutory appeal from the trial court's order denying DHS Management

Services, Inc., Diagnostic Health Services, Inc., Mobile Diagnostic Systems, Inc. (collectively

"DHS"),[1] and Jennifer Ann Hjarpe's motion to dismiss Heather Castro's claims. In two issues,

appellants contend the trial court erred in failing to dismiss Castro's claims because she failed to

timely file an expert report. Because we conclude, as the trial court did, that Castro's claims are

not health care liability claims subject to the expert report requirement, we affirm the trial court's

order.

---

[1] DHS Management Services and Mobile Diagnostics Systems, Inc. are wholly owned subsidiary affiliates of Diagnostic Health Services, Inc.

**FACTUAL BACKGROUND**

DHS is a provider of mobile imaging services. On June 27, 2010, Hjarpe, a technologist employed by DHS, was driving a DHS van containing imaging equipment to a site where she would be performing imaging services. While travelling on Central Expressway in Dallas, the van struck the rear of a vehicle driven by Yu-Ping Wang which, in turn, struck the rear of a vehicle driven by Heather Castro. As a result of the accident, Castro contends she suffered severe injuries.

Castro filed this suit against Hjarpe and DHS alleging that Hjarpe was negligent in her operation of the van and DHS was liable under theories of negligent entrustment and respondeat superior.[2] Approximately eight months later, Hjarpe and DHS filed a motion to dismiss Castro's claims under section 74.351 of the Texas Medical Liability Act based on her failure to file an expert report. Castro responded that her suit did not allege a health care liability claim and, therefore, the expert report requirement did not apply. The trial court denied the motion to dismiss and DHS and Hjarpe brought this interlocutory appeal.

**ANALYSIS**

DHS and Hjarpe assert two issues contending the trial court erred in failing to dismiss Castro's claims under section 74.351. Specifically, DHS and Hjarpe argue that Castro's claims against them involve the safety component of a health care liability claim thus making her suit subject to the requirements of chapter 74. One of the requirements of chapter 74 is that a claimant must serve an expert report in support of a health care liability claim no later than 120 days after the original petition was filed or the claim must be dismissed with prejudice. *See* Act of May 18, 2005, 79th Leg., R.S., ch. 635, 2005 Tex. Gen. Laws 1590 (amended 2013) (current

---

[2] Castro also asserted claims against Wang for negligence. Castro's claims against Wang were dismissed by an agreed order and nonsuit with prejudice on May 2, 2013.

version at TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West Supp. 2013)). Resolution of this issue turns on whether Castro's claims are "health care liability claims" as defined by the chapter. Whether a cause of action is a health care liability claim is a question of law we review de novo. *See Sherman v. HealthSouth Specialty Hosp., Inc.*, 397 S.W.3d 869, 872 (Tex. App.—Dallas 2013, pet. denied).

> Chapter 74 defines a "health care liability claim" as
>
> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13). To determine if a claim falls within this definition, we examine the nature of the claim being made. *See Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010). We focus on the essence of the claim and consider the alleged wrongful conduct as well as the duties allegedly breached. *See Sherman*, 397 S.W.3d at 872.

In support of their argument that Castro's claims for damages caused by the automobile accident are health care liability claims, DHS and Hjarpe rely on the Texas Supreme Court's opinion in *Texas West Oak Hospital, LP v. Williams*. *See Tex. West Oak Hosp. v. Williams*, 371 S.W.3d 171 (Tex. 2012). The court held in *Williams* that the phrase "directly related to health care" found in the definition did not modify the term "safety" and, therefore, claims against a health care provider involving a departure from accepted standards of safety need not be directly related to the provision of health care. *Id*. at 186. DHS and Hjarpe contend that, under *Williams*, it is irrelevant that Hjarpe was not providing medical care at the time of the accident and Castro's negligence claims constitute claims based on an alleged departure from accepted standards of safety. But the supreme court did not hold in *Williams* that a "safety" claim could be completely

–3–

unrelated to the provision of health care and, in fact, concluded that Williams's claims arose out "the health-related nature" of the services being providing. *Id*. at 183.

Although there is a split of authority among the Texas appellate courts, numerous cases issued after *Williams*, including several opinions by this Court, have held that, while a claim need not be *directly* related to health care, it cannot be completely unrelated to the provision of health care services and still fall under the definition of a health care liability claim. *See Columbia Med. Ctr. of Denton Subsidiary, L.P. v. Braudrick*, No. 02-13-00399-CV, 2014 WL 2144877, at *2 (Tex. App.—Fort Worth May 22, 2014, no pet. h.) (mem. op.); *Methodist Hosps. of Dallas v. Garcia*, No. 05-13-01307-CV, 2014 WL 2003121, at *2 (Tex. App.—Dallas May 14, 2014, no pet. h.) (mem. op.); *Methodist Healthcare Sys. of San Antonio, Ltd., LLP v. Dewey,* 423 S.W.3d 516, 516, 519–20 (Tex. App.—San Antonio, 2014 pet. filed); *Baylor Univ. Med. Ctr. v. Lawton,* No. 05–13–00188–CV, 2013 WL 6163859, at *1–2, *4 (Tex. App.—Dallas Nov. 25, 2013, pet. filed); *Christus St. Elizabeth Hosp. v. Guillory,* 415 S.W.3d 900, 902–03 (Tex. App.—Beaumont 2013, pet. filed); *Doctors Hosp. at Renaissance, Ltd. v. Mejia,* No. 13–12–00602–CV, 2013 WL 4859592, at *1, *3–4 (Tex. App.—Corpus Christi Christi Aug. 1, 2013, pet. filed) (mem.op.); *Bidwala v. Fielder*, No. 05-12-01709-CV, 2013 WL 3943123, at *1 (Tex. App.—Dallas July 31, 2013, no pet.) (mem. op.); *Good Shepherd Med. Ctr.-Linden, Inc. v. Twilley,* 422 S.W.3d 782, 783–85, 789 (Tex. App.—Texarkana 2013, pet. denied).[3] In reaching this conclusion, we have borne in mind the supreme court's directive that "[i]n seeking to distinguish ordinary negligence claims from [health care liability claims], the heart of these cases lies in the nature of the acts or omissions causing claimants' injuries and whether the events are within the ambit of the legislated scope of the TMLA." *See Williams*, 371 S.W.3d at 176. To

---

[3] *But see. e.g., Ross v. St. Luke's Episcopal Hosp.*, No. 14-12-00885-CV, 2013 WL 1136613, at *1 (Tex. App.—Houston [14th Dist.] March 19, 2013, pet. filed) (mem. op.) (a connection between the act or omission and health care is unnecessary).

–4–

fall within the ambit of the legislated scope of the TMLA, the conduct at issue must relate in some way to the provision of health care. Otherwise, every ordinary negligence claim against a physician or health care provider would be a health care liability claim. *See Lawton*, 2013 WL 6163859, at *3.

DHS and Hjarpe contend that Castro's claims relate to the provision of health care services because the mobility of their medical imaging services is an integral part of the health care services they provide and necessarily involves the use of a motor vehicle. DHS and Hjarpe compare Castro's accident claims to those addressed by this court in *Sherman v. HealthSouth Specialty Hospital, Inc. See Sherman*, 397 S.W.3d at 871. In *Sherman*, the claimant filed suit alleging she sustained injuries after a medical clinic employee failed to properly secure her and her wheelchair in a van transporting her home after receiving medical treatment at the clinic. *Id*. We concluded the claims were health care liability claims because, even though the defendant was no longer providing medical care or treatment at the time of the accident, it undertook to transport the claimant home following her treatment and, in doing so, remained responsible for her safety as a patient. *Id*. at 874. The conduct at issue was connected to the defendant's provision of health care services to the claimant.

In contrast, the conduct at issue here is completely unrelated to DHS and Hjarpe's provision of health care services. The only possible connection between the accident and health care is the fact that Hjarpe happened to be driving a van that provided imaging services. This is no stronger a connection than if the accident had occurred on hospital property. As the supreme court has stated, a claim is not a health care liability claim where "the only possible relationship between the conduct underlying the claim and the rendition of medical services or healthcare [is] the health care setting . . . , the defendant's status as a doctor or health care provider, or both." *See Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012). The fact that Hjarpe was driving to a

location to provide medical services when the accident occurred does not bring Castro's claims within the scope of the TMLA when those medical services do not bear even indirectly on the claims being made. Unlike the facts presented in *Williams* and *Sherman*, nothing in the conduct about which Castro complains is "health-related" in nature.

Based on the foregoing, we conclude none of Castro's claims are health care liability claims as defined by the TMLA. Accordingly, the trial court properly denied DHS and Hjarpe's motion to dismiss under the Act. We affirm the trial court's order.

/David Evans/
DAVID EVANS
JUSTICE

131304F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DHS MANAGEMENT SERVICES, INC.,
DIAGNOSTIC HEALTH SERVICES, INC.,
MOBILE DIAGNOSTIC SYSTEMS, INC.,
AND JENNIFER HJARPE, Appellants

No. 05-13-01304-CV      V.

HEATHER CASTRO, Appellee

On Appeal from the 191st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-11-15890.
Opinion delivered by Justice Evans.
Justices O'Neill and Lang-Miers
participating.

      In accordance with this Court's opinion of this date, the order of the trial court denying
DHS MANAGEMENT SERVICES, INC., DIAGNOSTIC HEALTH SERVICES, INC.,
MOBILE DIAGNOSTIC SYSTEMS, INC., AND JENNIFER HJARPE's motion to dismiss is
**AFFIRMED**.

      It is **ORDERED** that appellee HEATHER CASTRO recover her costs of this appeal
from appellants DHS MANAGEMENT SERVICES, INC., DIAGNOSTIC HEALTH
SERVICES, INC., MOBILE DIAGNOSTIC SYSTEMS, INC., AND JENNIFER HJARPE.

Judgment entered this 25th day of June, 2014.

/David Evans/
DAVID EVANS
JUSTICE